**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JACK A. JOSLYN,

                                        Plaintiff,

      v.                                                        No. 04-CV-348
                                                                              (TJM/DRH)

Jo ANNE B. BARNHART, Commissioner
of Social Security,

                                        Defendant.

---

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| OLINKSY & DiMARTINO<br>Attorney for Plaintiff<br>Historic First National Bank Building<br>186 West First Street<br>Oswego, New York 13126 | HOWARD D. OLINKSY, ESQ |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>   Northern District of New York<br>Attorney for Defendant<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff Jack A. Joslyn ("Joslyn") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

finding that Joslyn was no longer entitled to disability insurance benefits under the Social

Security Act (SSA). Joslyn moves for a remand for further administrative proceedings and

the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 7, 10.  For

---

[1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

the reasons which follow, it is recommended that the Commissioner's decision be remanded for further proceedings.

## I. Procedural History

On February 3, 1999, Joslyn was found disabled and began receiving disability insurance benefits with an onset date of September 21, 1998 pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 65, 83.[2] On May 1, 2002, it was determined that Joslyn was no longer disabled and benefits were terminated effective July 31, 2002. T. 98. Joslyn's appeal of this decision was denied. T. 15. Joslyn requested a hearing before an administrative law judge (ALJ), T. 102, which was held on May 20, 2003 before ALJ Joseph P. Medicis, Jr. T. 21-63. Joslyn was not represented by counsel. T.21. In a decision dated October 7, 2003,  the ALJ denied Joslyn's claims. T. 15-19. On February 24, 2004, the Appeals Council denied Joslyn's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 10. This action followed.

## II. Contentions

Joslyn contends that the ALJ erred when he failed to order a consultative psychological and psychiatric examination, failed to ensure that Joslyn properly waived his right to counsel, determined that Joslyn's residual functional capacity (RFC) contained no mental restriction, and found Joslyn capable of his past relevant work.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 6.

### III. Facts

Joslyn is currently thirty-one years old, completed the eighth grade, and previously worked as a construction roofer and maintenance worker. T. 33, 64, 124. Joslyn has been disabled since September 21, 1998 due to a closed head injury with physical residuals suffered in an automobile accident. T. 65, 305. Joslyn's benefits were terminated due to improvement in his condition. T. 73-75.

### IV. Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's  age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

After a claimant is found disabled, his or her entitlement is periodically reviewed and benefits may be terminated if there is substantial evidence that the impairment has improved to such an extent that he or she is now able to work. 42 U.S.C. §§ 421(I), 423(f)(1) (2003); Veino v. Barnhart, 312 F.3d 578, 581 (2d Cir. 2002). A finding that there

has been any improvement in the beneficiary's mental or physical impairment and that the beneficiary is now able to engage in substantial gainful activity must be supported by substantial evidence. 4 U.S.C. § 423(f)(1). "A medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)" 20 C.F.R. § 404.1594(b)(1) (2005). Thus, in order to "determine whether medical improvement has occurred," the SSA must compare "the current medical severity of the impairment[] . . . to the medical severity of that impairment[] at the time" of the most recent favorable medical decision. Id. § 404.1594(b)(7). The claimant has the burden of showing entitlement to continuation of benefits. Matthews v. Eldridge, 424 U.S. 319, 336 (1976).

### B. Scope of Review

The reviewing court must determine if the Commissioner has applied the proper legal standards and if the decision is supported by substantial evidence.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938));

4

Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996)

## V. Discussion

### A. Medical Evidence

On September 21, 1998, Joslyn was involved in a motor vehicle accident and was in a coma for 1½ months. T. 198-99, 269. On discharge, the diagnoses were leg trauma, mid-facial and nasal fracture, closed head trauma[3] with cerebral edema,[4] ventilatory dependence, and left pneumothorax.[5] T. 198, 269. In November 1998, Joslyn continued to experience paresthesias of the hands, had difficulty ambulating, and experienced weakness along the right side of his face and hands. T. 269. In December 1998, Joslyn was treated for post-accident injuries at Oswego hospital. T. 290-94. On January 13, 1999, Dr. Robert

---

[3]A closed head injury is "[a] head injury in which the scalp and the mucous membranes (of the mouth and nose) remain intact." 2-CH-CZ SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE 3060 (2004).

[4]"[E]xcess accumulation of fluid in the brain substance." DORLAND'S ILLUSTRATED MED. DICTIONARY 529 (28th ed. 1994) [hereinafter DORLAND'S].

[5][A]n accumulation of air or gas in the pleural space." DORLAND'S 949.

Weber noted that Joslyn was ambulating with broad-based and good strength using a rolling walker outdoors and no assistive device indoors, showed mild-to-moderate decrease in alternative motion on the right, gross strength testing was normal, and cognitive function remained slow. T. 268. Dr. Weber opined that Joslyn had a post-traumatic brain injury. T. 268.

On January 20, 1999, Michael Thompson, Ph.D., conducted a consultative organicity examination of Joslyn. T. 298-302. Joslyn reported problems with memory, concentration, and general thinking. T. 298.  Dr. Thompson found that Joslyn's cognitive and intellectual functioning were impaired and that Joslyn could not maintain himself independently in the community. T. 301.  Dr. Thompson opined that Joslyn did not have the cognitive or intellectual ability to comprehend and carry out simple work-related instructions secondary to problems associated with his recent closed head injury. T. 301.

On January 20, 1999, Dr. Myra Shayevitz conducted a consultative examination of Joslyn. T. 303-06. Joslyn was oriented times three, used a walker for balance, had a spastic gait, his cranial nerves were normal and functional, he could not do fine motor activity with his right hand, there was a full range of motion of the shoulders, elbows, low back, hips, knees, and ankles, and a limited range of motion in the right wrist. T. 304-05. The impression was status post-motor vehicle accident with serious head injury and the prognosis for improvement was poor. T. 305. Dr. Shayvitz found that Joslyn could sit but could do no extensive standing, walking, stair-climbing, lifting, or carrying, could not handle small objects with the right hand, and there was a speech impediment due to wiring of the jaws. T. 305.

An RFC assessment completed on January 28, 1999 found that Joslyn could

frequently lift and carry less than ten pounds, could stand and walk less than two hours, could sit six hours, and was limited in the upper and lower extremities. T. 320-27. A mental RFC assessment completed on February 3, 1999 found that Joslyn was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, respond appropriately to changes in the work-setting, was markedly limited in the ability to complete a normal work day with interruptions due to psychologically-based symptoms, and otherwise Joslyn had no significant limitations. T. 316-19.

On March 5, 2002, Joslyn presented to East Shore Medical with complaints of depression and anxiety. T. 283.The assessment was situational depression due to marital problems and Joslyn was referred for counseling. T. 283, 286. On April 26, 2002, Joslyn began taking Effexor for his depression. T. 287. On November 11, 2002, Joslyn presented for a six-month check-up and was in no acute distress, his depression was stable, and he remained on Effexor. T. 387.

On April 8, 2002, Dr. Kalyani Ganesh conducted a consultative orthopedic examination of Joslyn. T. 354-57. Joslyn did not use an assistive devise, his gait was normal, there was a full range of motion in the spine, upper extremities, hips, and knees, hand and finger dexterity was intact, and grip strength was 5/5 bilaterally. T. 354-55. The impression was status post-motor vehicle accident and status post-open reduction internal fixation, right ankle. T. 356. There were no gross balance problems, no limitation for sitting, standing, or the use of upper extremities, and a mild degree of limitation for walking and climbing. T. 356.

On April 8, 2002, Kristen Barry, Ph.D., conducted a consultative organicity examination of Joslyn. T. 358-361. Joslyn was not then receiving any psychiatric treatment or counseling. T. 358. Joslyn's general cognitive function, verbal and nonverbal reasoning skills fell in the borderline range, his reading skills were at an eighth grade level, his mental organic capacity appeared to be intact, his intellectual functioning was at a ninth grade education level, and there was no evidence of any significant dementia as a result of the 1998 motor vehicle accident. T. 360. Barry found that Joslyn could follow and understand simple instructions, had a history of some learning problems and special education programming, was presently functioning in the borderline range intellectually, demonstrated learning delays,  was able to perform simple tasks without any significant difficulty, and was able to learn new tasks. T. 361. Barry opined that Joslyn's allegations were not consistent with the examination results and the prognosis was good. T. 361.

A mental RFC assessment completed on July 8, 2002 found that Joslyn was moderately limited in the ability to understand, remember, add, carry out detailed instructions, maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting, and otherwise Joslyn was not significantly limited in other areas. T. 366-69.  The reviewer also found that Joslyn had significantly subaverage general intellectual functioning with deficits in adaptive functioning. T. 374. On July 10, 2002, Dr. Alan Auerbach reviewed Joslyn's medical records and found that Joslyn had made dramatic medical improvement. T. 384.

On April 25, 2003, Joslyn presented to the Oswego County Opportunities Health Center. T. 396. Since Joslyn's prescription for Effexor had expired, his depression, anxiety,

mood swings, insomnia, and irritable behavior had increased. T. 396. The impression was depression with anxiety and Post-Traumatic Stress Disorder (PTSD). T. 396. Joslyn was given a prescription for Effexor. T. 396. On May 15, 2003, John P. Anderson, M.S.W., C.S.W., conducted a psychiatric examination of Joslyn. T. 399-401. Joslyn reported short-term memory loss, periodic confusion, periodic depression, anxiety, irritability and angry outbursts, normal appetite, and normal psychomotor activity. T. 399. Joslyn denied hallucinations and suicidal or homicidal ideation or intent. T. 399. Joslyn was oriented times three, his memory and language appeared to be intact, attention and concentration appeared normal, but insight and judgment appeared slightly compromised. T. 399-400. The diagnosis was mood disorder. T. 400. Joslyn failed to present for a follow-up appointment with Dr. Suresh Patil. T. 402.

### B. Consultive Examination

Joslyn contends that the ALJ erred in failing to order a consultative psychological or psychiatric examination. The Commissioner contends that the organicity examination met this requirement.

A consultative examination is "a physical or mental examination or test purchased for [the claimant] at [the Commissioner's] request and expense from a treating physician . . . , another source of record, or an independent source. . . ." 20 C.F.R. § 416.919a (2005). A consultative examination is required when additional information is needed to "resolve a conflict or ambiguity" or to "secure needed medical evidence the file does not contain such as clinical findings, laboratory test, a diagnosis or prognosis necessary for decision." Id. If

the consultative report does not assess all the reported impairments and complaints described in the medical history, the consultative physician should be contacted to furnish the missing information. 20 C.F.R. § 404.1519p; Colon v. Apfel, 133 F. Supp. 2d 330, 334 (S.D.N.Y. 2001).

Dr. Barry conducted a consultative organicity evaluation which assessed Joslyn's intellectual and cognitive abilities. T. 358-61. Joslyn's general cognitive function and his verbal and nonverbal reasoning skills fell in the borderline range, his reading skills were at an eighth grade level, mental organic capacity appeared to be intact, his intellectual functioning was at a ninth grade education level, and there was no evidence of any significant dementia as a result of the 1998 motor vehicle accident. T. 360. Dr. Barry found that Joslyn could follow and understand simple instructions, had a history of learning problems and special education programming, was presently functioning in the borderline range intellectually, demonstrated learning delays,  was able to perform simple tasks without any significant difficulty, and was able to learn new tasks. T. 361.

Joslyn contends that the ALJ should have ordered a consultative psychological or psychiatric examination because his subjective symptoms of angry outbursts, depression, anxiety, and avoidance of social interaction were not addressed by the medical evidence as it exists in the record. Joslyn contends that the organicity examination did not address the issues that are typically addressed in a psychological or psychiatric examination such as mood, affect, and ability to concentrate.

However, this assessment fulfilled any requirement of the ALJ to complete the record. Other opinions in the record addressed Joslyn's other mental complaints. Joslyn

reported to Dr. Alcasid that when he was not taking Effexor, his depression, anxiety, mood swings, insomnia, and irritable behavior returned, indicating that the medication controlled his symptoms. T. 396. Joslyn contends that Dr. Alcasid was not a mental health professional and that this part of the record fails to establish the severity of Joslyn's symptoms, thus creating a gap in the record. However, Dr. Alcasid is a medical source and his treatment notes establish that Joslyn's symptoms improved with medication.

John P. Anderson, a mental health professional, found that Joslyn was oriented times three, his memory and language appeared to be intact, attention and concentration appeared normal, but insight and judgment appeared slightly compromised. T. 399-400. This assessment addresses Joslyn's cognitive abilities regarding his mental impairments. In addition, Joslyn's depression was stable and was controlled with medication, he was not currently receiving any psychiatric treatment or counseling, and the initial finding of disability was based in part on an organicity evaluation. T. 298, 358, 387, 402. A mental RFC assessment found that Joslyn was moderately limited in the ability to understand, remember, add, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting, and otherwise Joslyn was not significantly limited. T. 366-69.

There was thus sufficient evidence in the record for the ALJ to make a determination as to Joslyn's mental abilities and there was no gap, conflict, or ambiguity in the record that required the ALJ to order a second consultative examination.  It is recommended that the Commissioner's finding in this regard be affirmed.

## C. Waiver of Counsel

Joslyn contends that he did not make a knowing and voluntary waiver of his right to counsel and his claim was prejudiced as a result. The Commissioner contends that Joslyn's waiver was knowing and voluntary, and regardless, his claim was not prejudiced by appearing before the ALJ without counsel.

A claimant appearing before an ALJ is entitled to be represented by counsel. Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980). While the Secretary is not obligated to furnish a claimant with an attorney, the ALJ has a duty to ensure that the claimant is aware of the right to counsel, that a waiver of counsel is knowing and voluntary, and that the claimant received adequate notification of the right to counsel. Robinson v. Secretary of H.H.S., 733 F.2d 255, 258 (2d Cir. 1984); Frank v. Chater, 924 F. Supp. 416, 423 (E.D.N.Y. 1996).  A waiver may be in writing or orally at the hearing. Evangelista v. Secretary of H.H.S., 826 F.2d 136, 142 (1st Cir. 1987). At the hearing, the ALJ should verify that a pro se claimant received such prior notification of the right to counsel and, if such notification was inadequate, provide oral notification on the record at the hearing." Frank, 924 F. Supp. at 425.

In a letter dated October 29, 2002, Joslyn was informed that the SSA had received his notice of hearing and the letter explained the right to representation and included a leaflet regarding his right to representation, a list of Legal Services offices, and a waiver of counsel form. T. 106-13. There is no record that Joslyn received this notice or signed the waiver of counsel form. A notice of hearing dated April 24, 2003 was sent to Joslyn which included a statement regarding the existence of available representation and an

12

acknowledgment of receipt. T. 114-19. However, on May 14, 2003, it was noted that Joslyn

did not return any of the forms that had been sent to him. T. 120.

At the hearing, the ALJ stated that

> you have not a representative, but we've notified you right along
> that you've had the opportunity to get a representative whether
> you wanted to come in with an attorney or non-attorney or go to
> Legal Aid, we sent you that information. And I have to assume
> that you're ready to appear today and waiver your right to an
> attorney or representative today. Is that correct?

T. 25. Both Joslyn and his representative payee answered yes. However, the ALJ did not

verify that Joslyn had actually received the notice, made no effort to explain the benefits of

obtaining representation, and did not explain the possibility of seeking free counsel or a

contingency arrangement. The ALJ asked only whether he could assume from the fact that

Joslyn appeared without counsel that Joslyn wished to proceed without representation.

Joslyn had not previously appeared before an ALJ, had borderline intellectual functioning,

and there was no inquiry as to the background of his representative payee. Thus, Joslyn did

not properly waive his right to counsel.

The applicable standard for waiver of representation in these "nonadversarial"

hearings does not rise to the Sixth Amendment right to representation requirements.

Evangelista, 826 F.2d at 142-43; Infante v. Apfel, No. 97-CIV-7689 (LMM), 2001 WL

536930, at *10  (S.D.N.Y. May 21,2001). Therefore, the absence of counsel, without more,

creates no basis for remand. Hess v. Secretary of HEW, 497 F.2d 837, 840 n.4 (3d Cir.

1974). Remand is appropriate only if the claimant was prejudiced by the absence of

counsel and the ALJ failed to explore all the facts.  Evangelista, 826 F.2d at 142; Salomon

ex rel. Jenkins v. Apfel, No. 99 Civ. 4250, 2000 WL 776924, at *6 (S.D.N.Y. June 15, 2000). When a claimant is proceeding pro se at a hearing before the ALJ, "a duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts surrounding the alleged right or privilege." DeChirico v. Callahan, 134 F.3d 1177, 1183 (2d Cir. 1998)

Here, Joslyn contends that the ALJ failed to inquire into his complaints of balance problems, avoidance of social interaction, decreased ability to cope with stress, and angry outbursts. Joslyn also contends that the presence of an attorney would likely have resulted in a request for a consultative examination. Joslyn also contends that the ALJ failed to send a mental health source statement form to Oswego mental health. The Commissioner contends that the ALJ properly explored the issues of Joslyn's medical improvement and that there were no gaps in the record.

The ALJ questioned Joslyn's representative payee as to the nature of Joslyn's mental problems. T. 39. The representative payee offered evidence that Joslyn had scheduled an appointment with Dr. Patil, a psychiatrist. T. 394, 404. The ALJ gave Joslyn a mental assessment form for Dr. Patil to complete at this appointment along with a return envelope. T. 40. However, Joslyn failed to appear for the appointment. T. 404. In addition, the ALJ inquired as to any other mental health treatments and what medication Joslyn was prescribed. T. 39-43. The ALJ specifically questioned Joslyn as to who treated his mental problems, in an attempt to ensure that he had all of Joslyn's treatment records. T. 45-47. The ALJ questioned Joslyn about his loss of balance, avoidance of people, and his anger and stress. T. 53-55, 61-62. The ALJ requested and received treatment records from Dr.

14

Alcasid and Oswego County mental health. T. 43, 395-403. Therefore, the ALJ properly developed the record regarding all of Joslyn's complaints of mental impairments, properly explored and inquired into all of the relevant facts, requested a consultative examination, and sought additional information from Joslyn's treating sources. Joslyn was not prejudiced by the absence of counsel during the hearing.

Accordingly, it is recommended that the Commissioner's finding in this regard be affirmed.

**D. RFC**

Joslyn contends that the ALJ erred in determining that Joslyn's RFC contained no mental restrictions. The Commissioner contends that substantial evidence supports the ALJ's RFC finding.

RFC describes what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a) (2005). "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms." Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150.

Basic work activities which are relevant for evaluating the severity of a mental

15

impairment include the ability to understand, carry out, and remember simple instructions, and the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b)(1)-(5) (2005); see also Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996). Several areas relevant to the ability to work are used to rate the degree of functional limitations: activities of daily living, social function, concentration, persistence, pace, and episodes of decompensation. See 20 C.F.R. § 404.1520a (2005).

Here, the ALJ found that Joslyn's only severe mental impairment was borderline intellectual functioning. Substantial evidence supports the finding that there existed no other severe mental impairment. Joslyn was oriented times three, his memory and language appeared to be intact, attention and concentration appeared normal, but insight and judgment appeared slightly compromised. T. 399-400. A mental RFC assessment found that Joslyn was only moderately limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in work settings. T. 366-69.

Joslyn was not currently receiving any psychiatric treatment or counseling and although he had made an appointment with a psychiatrist, he did not keep this appointment. T. 394-404. Joslyn's general cognitive function and his verbal and nonverbal reasoning skills were in the borderline range, mental organic capacity was intact, his intellectual functioning was at a ninth grade education level, and there was no evidence of any significant dementia. T. 360. Joslyn could follow and understand simple instructions, had a history of learning problems and special education programming, was able to perform

simple tasks, and was able to learn new tasks. T.361. On March 5, 2002, the assessment was situational depression due to marital problems and in November 2002, Joslyn was in no acute distress, his depression was stable, and Effexor controlled his depressive symptoms. T. 387.

Therefore, because substantial evidence supports the ALJ's finding here, that finding should be affirmed.

### E. Past Relevant Work

Joslyn contends that the ALJ erred in finding him capable of his past relevant work as a roofer. The Commissioner contends that the ALJ's finding is proper.

Once the ALJ makes a determination as to the claimant's RFC, the ALJ must then determine whether this RFC will permit the claimant to meet the actual physical and mental demands of the claimant's past relevant work. Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999); Lunan v. Apel, No. 98-CV-1942, 2000 WL 297988, at *7 (N.D.N.Y. Mar. 10, 2000) (Smith, M.J.). The ALJ must make an "explicit finding regarding the actual physical and mental demands of the claimant's past work." 20 C.F.R. § 404.1520(f); Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991). The ALJ may refer to the Dictionary of Occupational Titles for a claimant's past work as support for his or her findings. Clark v. Barnhart, No. 02-CV-4626 (FB), 2003 WL 22139777, at *7-8 (E.D.N.Y. Sept. 16, 2003); Lunan, 2000 WL 297988, at * 7. A finding that a claimant can return to past work must be based on more than conclusory statements. The ALJ must specifically and fully explain the claimant's limitations, and how those limitations affect the claimant's RFC. Jasinski v. Barnhart, 341

17

F.3d 182, 185 (2d Cir. 2003); Pfitzner, 169 F.3d at 568.

Joslyn contends that the ALJ did not elicit testimony as to the actual tasks of his job as a construction roofer. The ALJ concluded that Joslyn retained the RFC to perform medium work, could perform his past relevant work as a construction roofer which required medium exertion as performed in the national economy, and this work did not require exertion exceeding the medium RFC. T. 18. Joslyn contends that the ALJ did not make a finding of fact as to the physical and mental demands of his past relevant work.

The ALJ found that Joslyn's only severe impairment was borderline intellectual functioning. However, the ALJ did not question Joslyn regarding the mental demands of Joslyn's past work as a construction worker as he performed that job. During the hearing, although the ALJ inquired as to Joslyn's past employment, he failed to inquire as to the nature of this job. While the ALJ cited the Dictionary of Occupational Titles, he did not make a finding as to how, if at all, Joslyn's borderline intellectual functioning limitation affected his ability to perform this job.

Therefore, it is recommended that the Commissioner's decision be remanded for further evaluation of the actual physical and mental demands of Joslyn's past relevant work.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision terminating disability benefits be **REMANDED** for further proceedings concerning Joslyn's past relevant work.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATE: January 5, 2006
  Albany, New York

_David R. Horner_
United States Magistrate Judge